UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA             :

    - v. -                                            :       14 Cr. 563 (KMW)

OLUKAYODE AGORO,                     :

                 Defendant.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

                                             PREET BHARARA
                                             United States Attorney for the
                                             Southern District of New York
                                             Attorney for the United States of America

Katherine C. Reilly
Assistant United States Attorney
    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA             :

        - v. -                                          :           14 Cr. 563 (KMW)

OLUKAYODE AGORO,                     :

        Defendant.                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### SENTENCING MEMORANDUM

The defendant is scheduled to be sentenced in this matter on January 20, 2016 at 10:00 a.m. The Government respectfully submits this memorandum in advance of that sentencing. As set forth in the Presentence Investigation Report ("PSR") and in the plea agreement between the parties dated May 18, 2015 (the "Plea Agreement"), the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range applicable to this defendant is 24 to 30 months' imprisonment.[1] For the reasons set forth below, the Government submits that the Court should impose a sentence within the Guidelines range in this case.

### I. BACKGROUND

**A.  Offense Conduct**

Beginning in 2012, representatives of Consolidated Edison ("Con Ed") began reporting to the United States Postal Inspection Service ("USPIS") that checks made payable to Con Ed and sent to the company at one of two specific post office boxes were being stolen. (PSR ¶ 10). Checks sent to Con Ed at those post office boxes continued to be reported stolen throughout 2012 and into the summer of 2013, though the reports of stolen checks subsided for

---

[1] The Plea Agreement is attached to the Government's Sentencing Memorandum as Exhibit A.

1

several months in mid to late 2013. (Id.) At least some of those stolen checks were cashed or deposited—often after having been altered to change the name of the payee from that of Con Ed to that of another business or individual.[2]

USPIS determined that based on the number of checks stolen and the fact that those checks were sent from numerous locations, the checks were stolen after they arrived at the United States Postal Service facility through which they were processed, the James A. Farley Post Office in Manhattan. (Id. ¶¶ 9-10). Much of the mail sent to Con Ed at the two post office boxes mentioned above was collected in a large bin (the "Con Ed Bin") in a processing area of the Farley Post Office, before being picked up each day by a representative of Con Ed. (Id. ¶ 12). The Con Ed Bin was unsecured and was situated directly next to the bin where mail sent to another company—UPRR—was collected before being picked up. (Id. ¶ 13). Charles Louis, Jr., a co-defendant in the instant case, picked up mail for UPRR from the Farley Post Office between 2010 and the date of his arrest in July 2014, with the exception of a period of several months beginning in August 2013 during he which he was recuperating from a stroke. (Id. ¶ 14). When Louis returned to work, he walked with a cane and could not use his right hand; as a result, he was was always accompanied by someone else, most often Olukayode Agoro, the defendant. See (Id. ¶¶ 15, 18).

---

[2]  In addition to the defendant and his co-defendant, Charles Louis, Jr., two other individuals have been charged in this district with participation in this scheme. On November 4, 2013, following a jury trial before Judge Baer, Alain Piton was convicted of conspiring to steal mail and substantive theft of mail from in or about the fall of 2012 up to and including the spring of 2013. United States v. Piton, No. 13 Cr. 361 (LAP). More than 450 checks made payable to Con Edison were found in Piton's apartment in February 2013. Piton has not yet been sentenced. On December 9, 2014, Ogechukwa Udeozo pleaded guilty before Magistrate Judge Kevin N. Fox to committing misdemeanor obstruction of mails between in or about February 2013 and in or about March 2013. United States v. Udeozo, No. 13 Cr. 842 (CM). Udeozo admitted that she had deposited two checks stolen from the mail. Udeozo's guilty plea was accepted by Judge McMahon and, on May 7, 2015, she was sentenced to three years' probation.

In December 2013, USPIS installed a surveillance camera above the Con Ed Bin. Surveillance video taken from that camera clearly shows the defendant and his co-defendant, Louis, stealing mail from the Con Ed Bin on multiple occasions between January 2014 and May 2014. (Id. ¶¶ 16 - 20). The thefts were blatant; Louis removed handfuls of envelopes from the Con Ed Bin and placed them in his pockets or in containers of UPRR mail, and the defendant concealed stolen mail amongst UPRR's mail and carried stolen mail out of the Farley Post Office, along with UPRR's mail.[3] See (Id.). The checks sent to Con Ed and reported stolen between January 2014 and May 2014 had a total face value of more than $1 million. (Id. ¶ 24).

Further investigation by USPIS, however, revealed that the defendant's involvement in the charged conspiracy was not limited to stealing mail from the Farley Post Office in the first several months of 2014. On two occasions in August 2013—several months before the defendant began accompanying Louis to the Farley Post Office—the defendant deposited checks sent to Con Ed and stolen from the Con Ed Bin into a bank account he controlled. (Id. ¶¶ 21-22). The name of the payees on the checks had been altered; the face value of the checks totaled more than $62,000. (Id. ¶ 21).

### B. Procedural History

On June 27, 2014, the Honorable Michael H. Dolinger signed a complaint charging the defendant and Louis with one count of conspiring to steal mail. The defendant was arrested on July 1, 2014. On August 25, 2014, a one-count Indictment was returned in the instant case, charging the defendant and Louis with conspiring to steal mail between in or about January 2014 and in or about May 2014, in violation of Title 18, United States Code, Section 371. On May 29, 2015, the Government filed a Superseding Information against the defendant,

---

[3] Louis did, on occasion, come to the Farley Post Office with individuals other than the defendant; he stole mail from the Con Ed Bin on some of those occasions.

3

charging him with conspiring to steal mail between in or about June 2013 and in or about May 2014. (PSR ¶¶ 1-2). The defendant appeared before the Honorable James C. Francis to plead guilty to the one count Superseding Information on that same day. (PSR ¶ 5). On June 11, 2015, this Court entered an order accepting the defendant's guilty plea.[4]

### C. The Guidelines Calculation

As set forth in the PSR and the Plea Agreement, the total offense level applicable to the defendant's conduct is 17, and the defendant is assigned to criminal history category I. Accordingly, the defendant's Guidelines range is 24 to 30 months' imprisonment. (PSR ¶ 84); (Plea Agreement at 3).

### D. The Probation Office Recommendation and the Defendant's Submission

Based primarily upon the history and characteristics of the defendant and the Probation Office's assessment of the defendant's conduct in comparison to that of his co-defendant, the Probation Office recommends the imposition of a sentence of time served, to be followed by three years' supervised release.[5] (PSR at 18-19). The defendant's January 10, 2016 submission seeks a probationary sentence. (Def. Mem. at 10).

## II. DISCUSSION

In light of the nature and circumstances of the instant offense, a Guidelines sentence is appropriate in this case. The 18 U.S.C. § 3553(a) factors applicable here include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence to this defendant and other similarly situated individuals, and

---

[4] Louis pleaded guilty to conspiring to commit mail between January 2014 and May 2014. (PSR ¶ 8). On July 20, 2015, Louis was sentenced by this Court to time served, to be followed by three years' supervised release. (Id.) The transcript of the sentencing proceeding as to Louis is attached hereto as Exhibit B.

[5] The defendant has served less than one day, as he was released on conditions on the day he was arrested.

4

to protect the public from further criminal conduct.  18 U.S.C. § 3553(a)(2)(A)-(C).  These considerations weigh in favor of a sentence within the applicable Guidelines range.[6]

### A.    A Guidelines Sentence is Warranted in this Case.

First, a sentence within the Guidelines range is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.  18 U.S.C. § 3553(a)(2)(A).

The defendant stole a substantial number of checks, worth at least several hundred thousand dollars, all of which were sent to Con Ed by mail.[7]  He also deposited at least two stolen checks, directly and personally profiting from the charged conspiracy to steal mail.  As discussed in detail in the Government's sentencing submission with regard to the defendant's co-defendant, Charles Louis, as well as at the sentencing proceeding held with regard to Louis, see (Ex. B at 26-27), these were checks sent, for the most part, by businesses to pay outstanding electricity bills.  While the intended loss amount of the offense at issue drives the applicable Guidelines range, any consideration of the seriousness of the offense must include an assessment of the disruption to the operations of the affected businesses—which include Con Ed, its

---

[6]    In addition to the imposition of a Guidelines sentence, the Government also respectfully requests that the Court enter an order of restitution against the defendant in the amount of $62,623.73, the total face value of the stolen checks personally deposited by the defendant.  Notably, the defendant agreed to pay restitution in an amount ordered by the Court in the Plea Agreement.  (Ex. A at 2).  The PSR suggests that Con Ed is the victim of the instant offense.  (PSR ¶ 94).  While certainly it is true that Con Ed's mail was stolen, in this case, it is the bank at which the stolen checks were deposited, which then dispensed cash based on those deposits, that suffered the financial loss.  Accordingly, the restitution in this case should be paid to the bank.  A proposed restitution order is attached as Exhibit C to the Government's sentencing memorandum.  Because the proposed order contains identifying information as to the victim bank, a redacted version of the proposed order will be filed on the public docket.

[7]    As this Court is aware, the Guidelines applicable to Agoro's co-defendant were calculated based on an intended loss amount of more than $1.2 million.  See (Ex. B at 3).  The lower loss amount for which the defendant is held accountable here—between $400,000 and $1,000,000—is indicative of the fact that the defendant participated in some, but not all, of the thefts of mail from the Con Ed Bin observable on the surveillance video.

5

customers, and the banks at which stolen checks were deposited or cashed—that resulted from this offense. While that disruption is difficult to quantify, it was certainly foreseeable that the thefts of these checks would result not only in financial loss, but also in wasted time and resources as employees of the affected businesses attempted to sort out the confusion created by checks repeatedly going missing from the mails and, in some cases, being deposited or cashed in connection with wholly unrelated accounts. Indeed, customers of Con Ed who rely on the mails as a means of transmitting payment for their electric bills no doubt needed to address the problems created by these thefts with some urgency, as non-payment could have resulted in having their electricity turned off, a particular concern given that among the affected customers was, for example, a New York City hospital.

        The defendant urges this Court to consider the likely disparity between the intended loss in this case—which drives the Guidelines calculation—and the actual loss.[8] In so doing, he argues that there is a "lack of evidence that defendant was aware of any large scheme to impose a loss or to profit greatly from criminal acts." (Def. Mem. at 6). To the contrary, the defendant himself admitted that he deposited stolen checks, (Def. Pl. Tr. at 11), conduct that took place in the summer of 2013, well before the defendant began going to the Farley Post Office to participate directly in the theft of the checks.[9] By that time, having deposited checks himself, he was no doubt aware that the goal of the conspiracy was to steal checks and to profit directly off

---

[8] The defendant does not contest, (Def. Mem. at 6), nor could he, that intended loss amount is an inappropriate basis upon which to calculate the applicable Guidelines range. (Def. Mem. at 6). Indeed, the application notes to U.S.S.G. § 2B1.1, which governs economic offenses such as the one committed by the defendant, notes that relevant loss for the purposes of calculating the applicable Guidelines range is "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, App. Note 3.

[9] The transcript of the defendant's plea is attached hereto as Exhibit D.

of these thefts by cashing or depositing the checks.[10] Thus, the defendant should be held accountable for the significant economic harm intended as a result of the conspiracy.

The defendant also contends that he played a limited role in the instant offense, arguing that he "simply assisted Louis" in stealing the mail.[11] (Def. Mem. at 6). At the outset, to the extent the defendant played a more limited role than Louis in terms of the number of thefts of mail from the Con Ed Bin in which he participated, that is reflected in the lower intended loss amount for which the defendant is held accountable in the calculation of the applicable Guidelines range. See footnote 7, supra at 5. Moreover, the defendant's assertion that he played a role of mere assistant understates his involvement in the charged conspiracy. The defendant himself deposited stolen checks into a bank account set up in a name other than his own, personally profiting from the theft of mail. Moreover, while Louis had access to the Farley Post Office, the defendant enabled him to commit the 2014 thefts, as Louis appeared to be incapable of driving or carrying out quantities of mail on his own after suffering a stroke. See (PSR ¶ 15; Ex. B at 18). Taken together, this conduct demonstrates that Agoro was a long-term and central participant in what was a long-running scheme to steal from Con Ed, its customers, and affected banks.

Second, a sentence within the Guidelines range is necessary to afford adequate deterrence to the defendant and others similarly situated and to protect the public from further

---

[10]   In this way, the defendant differs to a degree from his co-defendant, Charles Louis. As this Court noted at Louis's sentencing proceeding, in the absence of evidence that Louis himself opened stolen envelopes containing checks, the question of whether or not he had direct knowledge of how much money was taken is an open one. See (Louis Sent. Tr. at 6-7). Here, the defendant's depositing of at least two stolen checks—each of which was made out for an amount in excess of $19,000—provides evidence that he was aware of the magnitude of potential loss involved in his theft.

[11]   The defendant's sentencing submission mistakenly contends that the defendant participated in a five-month conspiracy. To the contrary, as set forth above, the defendant pleaded guilty to a conspiracy that spanned almost eleven months.

criminal conduct.  18 U.S.C. § 3553(a)(2)(B) and (C).  The theft of checks sent to Con Ed was a chronic problem that disrupted the operations of Con Ed, many of its customers, and affected banks for almost two years and appears to have involved the distribution of stolen checks to multiple individuals, including the defendant, at least some of whom deposited or cashed those checks.  A Guidelines sentence would deter others who, like the defendant, are presented with what looks at first glance like an opportunity to make money quickly by stealing mail and monetizing stolen checks.  Moreover, a Guidelines sentence would deter the defendant from any such future conduct.  The defendant characterizes his behavior with regard to the instant offense as "aberrant."  (Def. Mem. at 7).  The defendant, however, has two prior criminal convictions, both of which involve false statements and misrepresentation, of the same variety required to steal, alter, and deposit the checks at issue in the instant case.  (PSR ¶¶ 41-44).  The defendant was convicted in 1997 of making a false statement in a passport application and in 2010 for disorderly conduct, a conviction stemming from a 2000 arrest related to the use of a corporate American Express account without authorization.  (Id.).  While these offenses are distant in time, their similarity in character to the instant offense demonstrates that the defendant—who has never before served a period of incarceration  (PSR ¶¶ 41, 43)—has not been deterred by the sentences imposed  upon him in the past.

       For the reasons set forth above, a sentence of time served—less than one day—would not appropriately reflect the seriousness of the offense committed in this case, as reflected in the intended loss amount, the disruption to the businesses affected by this crime, and the defendant's role in its commission, nor would it adequately deter the defendant and others from future criminal conduct.

### B.     The History and Characteristics of the Defendant

The defendant's request for a sentence of time served is also based, in large part, on the history and characteristics of the defendant, particularly his age, the absence of criminal history points applicable to his prior criminal conduct, and his involvement with his community. (Def. Mem. at 7-8). The defendant's criminal history does not result in the imposition of criminal history points pursuant to the Guidelines because of the age of those convictions; nevertheless, the Court may consider the nature of the defendant's prior offenses in sentencing him, as discussed above. As to the defendant's ties to his family and to his community, they existed at the time he committed the instant offense. The suggestion that he engaged in this criminal conduct merely "out of a wish to assist someone during a time when he was experiencing significant economic pressures," (Def. Mem. at 7), discounts the motivation to personally profit from his crimes which no doubt drove the defendant's conduct, particularly his depositing of stolen checks. While the Government does not doubt the difficulties faced by the defendant due to his health concerns and as a result of his son's drug use, (Def. Mem. at 4), these are not the kinds of concerns that are out of the ordinary for defendants who come before this Court to be sentenced. Moreover, the defendant makes clear that he has a relatively stable family situation and is an active participant in his community. (Def. Mem. at 3-5). In addition, he has a history of employment. (PSR ¶¶ 73, 81). That the defendant chose to commit the instant offense in spite of these stabilizing factors is a factor that should be considered by the Court in imposing sentence.

### III. CONCLUSION

For the foregoing reasons, the Government respectfully submits that a sentence within the applicable Guidelines range of 24 to 30 months' imprisonment is appropriate in this

case and would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

Dated: New York, New York
       January 13, 2016

                                Respectfully submitted,

                                PREET BHARARA
                                United States Attorney
                                Southern District of New York

By: _____
     Katherine C. Reilly
     Assistant United States Attorney
     (212) 637-6521

10